**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION**

| | |
|---|---|
| CHARLENE EIKE, *et al.*,              ) | |
|                       Plaintiffs, ) | |
|                                  ) | **No. 3:12-cv-01141-SMY-DGW** |
| v.                                                    ) | |
| ALLERGAN, INC., *et al.*,             ) | |
|                       Defendants.  ) | |

**<u>DEFENDANT SANDOZ INC.'S MOTION FOR SUMMARY
JUDGMENT AND BRIEF IN SUPPORT THEREOF</u>**

**TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................................................ i

TABLE OF AUTHORITIES ........................................................................................................ ii

I.    INTRODUCTION ............................................................................................................. 1

II.   FACTUAL RECORD RELEVANT TO SUMMARY JUDGMENT ............................... 2

    A.   Plaintiffs' Claims .................................................................................................... 2

    B.   Sandoz Is Nothing More Than a Distributor. ........................................................ 3

        1.   None of the Medications at Issue Was Manufactured by Sandoz. .............. 3

        2.   Sandoz did Not Distribute Any of the Relevant Eye Drop Medications Prior to 2011. ................................................................................................ 4

    C.   Sandoz Was Contractually Bound to its Limited Role as Distributor of Products Manufactured By Alcon. ........................................................................ 5

    D.   Plaintiffs' Expert Had No Criticisms of Sandoz. ................................................... 7

III.  ARGUMENT ..................................................................................................................... 8

    A.   Legal Standard ....................................................................................................... 8

    B.   Sandoz Is Entitled to Summary Judgment as to All of Plaintiffs' Claims ............ 9

        1.   Sandoz' Role Was Contractually Limited to that of a Distributor and It Cannot Be Held Responsible for Plaintiffs' Alleged Damages. .................... 9

        2.   Plaintiffs Lack Standing to Assert Their Claims Against Sandoz. ............ 10

            a.   Plaintiffs Cannot Trace Their Alleged Injuries to Sandoz' Conduct. ........ 11

            b.   Plaintiffs' Injuries Would Not Be Redressed by the Requested Relief as to Sandoz, Because Sandoz Cannot Implement the Changes Requested by Plaintiffs. ................................................................ 12

    C.   Plaintiffs Cannot Proffer Any Other Evidence in Support of Their Claims against Sandoz. .................................................................................................... 14

IV.   CONCLUSION ............................................................................................................... 14

## **TABLE OF AUTHORITIES**

**Cases**

*Bronson v. Swensen,*
   500 F.3d 1099 (10th Cir. 2007) .................................................................................... 13

*Claudio v. Illinois Dep't of Corr.,*
   No. 84 C 7154, 1985 WL 2022 (N.D. Ill. June 27, 1985) ........................................... 12

*Egger v. Phillips,*
   710 F.2d 292 (7th Cir. 1983) ......................................................................................... 9

*First Commodity Traders v. Heinold Commodities,*
   766 F.2d 1007 (7th Cir. 1985) ....................................................................................... 9

*Head Start Family Educ. Program, Inc. v. Coop. Educ. Serv. Agency 11,*
   46 F.3d 629 (7th Cir. 1995) ......................................................................................... 12

*In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Products Liab. Litig.,*
   No. 309MD02100DRHPMF, 2014 WL 1632149 (S.D. Ill. Apr. 24, 2014) .............. 13

*Kelly v. Cape Cod Potato Chip Co.,*
   81 F.Supp. 3d 754 (W.D. Mo. 2015) ........................................................................... 10

*Kremers v. Coca-Cola Co.,*
   712 F. Supp. 2d 759 (S.D. Ill. 2010) ............................................................................. 9

*Libertarian Party of Ind. v. Marion Cnty. Bd. of Voter Registration,*
   778 F.Supp. 1458 (S.D. Ind. 1991) ............................................................................. 12

*Lujan v. Defenders of Wildlife,*
   504 U.S. 555, 112 S. Ct. 2130 (1992) .................................................................... 11, 12

*Luster v. City of Lebanon, Illinois,*
   No. 04CV0663 MJR, 2006 WL 2802052 (S.D. Ill. Sept. 28, 2006) .......................... 11

*Lynnbrook Farms v. Smithkline Beecham Corp.,*
   79 F.3d 620 (7th Cir. 1996) ........................................................................................... 8

*McDaniel v. Bd. of Educ. of City of Chicago,*
   956 F. Supp. 2d 887 (N.D. Ill. 2013) .......................................................................... 13

*Nat'l Parks & Conservation Ass'n v. Bureau of Land Mgmt.,*
   606 F.3d 1058 (9th Cir. 2010) ..................................................................................... 13

*Okpalobi v. Foster,*
   244 F.3d 405 (5th Cir. 2001) ....................................................................................... 13

*Perry v. Vill. of Arlington Heights,*
   186 F.3d 826 (7th Cir. 1999) ....................................................................................... 12

*Posey v. Skyline Corp.,*
   702 F.2d 102 (7th Cir. 1983) ......................................................................................... 9

*Reitz v. Nationstar Mortg., LLC,*
   954 F. Supp. 2d 870 (E.D. Mo. 2013) ........................................................................ 10

*Robinson v. Toyota Motor Credit Corp.*,
   201 Ill.2d 403 (2002) ................................................................................................... 9
*Scott v. DiGuglielmo*,
   615 F. Supp. 2d 368 (E.D. Pa. 2009) ........................................................................ 13
*Siegel v. Shell Oil Co.*,
   612 F.3d 932 (7th Cir. 2010) ....................................................................................... 9
*Simon v. Easter Ky. Welfare Rights Organization*,
   426 U.S, 26 (1976) .................................................................................................... 11
*Snyder v. Millersville Univ.*,
   No. 07–1660, 2008 WL 5093140 (E.D. Pa. Dec. 3, 2008) ........................................ 13
*Swan v. Bd. of Educ. of City of Chicago*,
   956 F. Supp. 2d 913 (N.D. Ill. 2013) ......................................................................... 12
*Turner v. McGee*,
   681 F.3d 1215 (10th Cir. 2012) ................................................................................. 13
*Williams v. Doyle*,
   494 F. Supp. 2d 1019 (W.D. Wis. 2007) ................................................................... 13

**Statutes**

815 ILCS 505/1 ................................................................................................................. 1
Mo. Rev. Stat. § 407.010 .................................................................................................. 1
Mo. Rev. Stat. § 407.020.1 ............................................................................................. 10
Mo. Rev. Stat. § 407.025.1 ............................................................................................. 10

**Other Authorities**

Fed. R. Civ. P. 56 .......................................................................................................... 1, 8
S.D. Ill. L. Rule 7.1 ........................................................................................................... 1

Defendant Sandoz Inc. ("Sandoz"), by its undersigned counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, respectfully moves this Honorable Court for entry of summary judgment in its favor and against Plaintiffs on all claims alleged against Sandoz in this action, on the grounds that there is no genuine dispute as to any material fact and Sandoz is entitled to judgment as a matter of law. Pursuant to Local Rule 7.1(c), Sandoz submits the following brief in support of its motion:

I.     INTRODUCTION

In this action, Plaintiffs seek to require Sandoz Inc. ("Sandoz") to unilaterally make changes to the generic prescription eye drop medications it distributes, but does ***not*** manufacture, pursuant to a License Distribution and Supply Agreement dated June 30, 2011 ("Distribution Agreement") between Alcon Laboratories, Inc., Alcon Research, Ltd., Alcon Pharmaceuticals Ltd. (collectively, "Alcon"), and Sandoz.[1] Plaintiffs allege that Alcon, Sandoz, and other pharmaceutical companies (collectively, "Defendants")[2] manufacture or distribute various brand name and generic prescription eye drop medications in bottles that allegedly emit drops larger than the capacity of the human eye. According to Plaintiffs, this practice results in wasted product and ultimately forces Plaintiffs to buy more product than they actually needed. Plaintiffs assert that Defendants' marketing and sale of medications in bottles that purportedly dispense drops larger than the capacity of the human eye violates the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.* ("ICFA") and the Missouri Merchandising Practice Act, Mo. Rev. Stat. § 407.010 *et seq.* ("MMPA").

---

[1] Sandoz and Alcon are both affiliates of one another. Falcon Pharmaceuticals, Ltd. ("Falcon") was also a party to the Distribution Agreement, but that is not germane to this Brief. Falcon was also an affiliate of both Sandoz and Alcon.

[2] Plaintiffs have named Allergan, Inc., Allergan USA, Inc., Allergan Sales, LLC., Alcon Laboratories, Inc., Alcon Research, Ltd., Falcon Pharmaceuticals, Ltd., Sandoz, Bausch and Lomb Incorporated, Pfizer Inc., Merck & Co., Inc., Merck, Sharp & Dohme Corp., and Prasco, LLC as Defendants. This Brief is filed on behalf of Sandoz because of the unique relationship between Sandoz and the Alcon entities under the Distribution Agreement, which governs Sandoz' limited role as a distributor of certain generic products manufactured by Alcon.

1

As evidenced by the Distribution Agreement, the terms and conditions of which are clear, unambiguous, and undisputed, Sandoz does not manufacture and is merely a distributor of certain Alcon-manufactured generic medications at issue. As a result of this binding contract, Sandoz is ***not*** responsible for and ***cannot*** make any changes to the size of the eye drops, the bottle, the medication, the labeling, or any other aspect of the medications. Also, because of Sandoz' limited involvement as a distributor of Alcon-manufactured eye drop products, Plaintiffs cannot satisfy the threshold requirement of Article III standing to proceed with their claims against Sandoz. Further, Plaintiffs' expert witness, Alan Robin, M.D., had no criticisms of Sandoz. Therefore, and as explained in more detail below, because no dispute of material fact exists on any of Plaintiffs' claims regarding Sandoz, Sandoz is entitled to summary judgment as a matter of law.

## II.     FACTUAL RECORD RELEVANT TO SUMMARY JUDGMENT

### A.     Plaintiffs' Claims.

In their First Amended Complaint, Doc. 44 ("FAC"), Plaintiffs allege that they bought prescription eye drop medications manufactured and/or sold by the Defendants. FAC ¶ 1. Plaintiffs contend that the design and dimensions of the dropper tip result in drops "so large that they exceed the capacity of the eye," causing wasted product to run down a patient's cheeks or drain into his or her nasolacrimal system. *Id.* ¶ 5. Plaintiffs contend that this waste results in users running out of medicine before they should and needing to buy additional bottles. *Id.* ¶ 10. Specifically, as to Sandoz, Plaintiffs allege, "Since on or about April 2011, Defendant Sandoz Inc. has marketed and sold Alcon's generic ophthalmic products in the United States." *Id.* ¶ 22.

Based on these allegations, Plaintiffs bring multiple causes of actions against Sandoz under the ICFA and the MMPA. *Id.* ¶¶ 13, 41, 133-152; 163-172. In addition to monetary damages, Plaintiffs seek to compel Sandoz to change "the design and dimension of the dropper

2

tip" of the eye-drop medications to reduce the drop size to a volume no larger than 15 μL per drop. *Id.* ¶¶ 85; 88; Prayer for Relief. As shown below, Sandoz is not involved in the manufacture of the eye drop medications at issue or their bottles, and therefore, is wholly unable to make the changes Plaintiffs seek. Because Sandoz is not responsible for the dropper design and is not able to make the changes Plaintiffs seek, it cannot be held liable for Plaintiffs' alleged damages.

      **B.**     **Sandoz Is Nothing More Than a Distributor.**

            **1.**     **None of the Medications at Issue Was Manufactured by Sandoz.**

Plaintiffs list almost 60 brand name and generic eye drop medications purportedly manufactured and/or distributed by the various Defendants. FAC ¶¶ 20, 23, 25, 27, 30, 33. Many of the medications were not actually purchased by the named Plaintiffs during the relevant time frame. On August 21, 2013, Magistrate Judge Wilkerson entered an Order limiting the number of drugs on which to conduct discovery to those "purchased by Plaintiffs" during "the relevant time period." Order, Doc. 118, at pp. 2-3. After thus limiting the drugs on which discovery would be conducted, the generic drugs at issue applicable to Alcon and Sandoz were identified as timolol, latanoprost, dorzolamide/timolol, and brimonidine tartrate. *See* Plaintiffs' excerpted prescription drug records, filed under seal as **Exhibit A**; **Appendix 1** (identifying ANDA approvals and labels reflecting Plaintiffs' purchase of eye drops manufactured by Alcon and distributed by Sandoz; filed under seal). Sandoz distributed each of these generic medications in the United States at times during the relevant time period. Defendant Sandoz Inc.'s Answers and Objections to Plaintiffs' First Set of Interrogatories Directed to Sandoz, attached as **Exhibit B**, No. 8; Appendix 1.

Although Sandoz held ANDAs for three of the subject generic medications—brimonide tartrate (ANDA 078075), dorzolamide HCl (ANDA 078748) and dorzolamide HCl and timolol

3

maleate HCl ("dorzolamide-timolol") (ANDA 078749)—its role in this case is purely as a distributor of Alcon-manufactured versions of these medications under ANDAs held by Alcon, because Plaintiffs purchased only the Alcon-manufactured medications. Seitz Aff., filed under seal as **Exhibit C**, ¶¶ 6-7, 9-11. Sandoz also holds an ANDA for brimonidine tartrate and timolol maleate (ANDA 091087), which has received tentative approval only and consequently has never been marketed or sold. *Id*. ¶ 8. Thus, Plaintiffs never purchased any medications that Sandoz manufactured, sold, or distributed pursuant to its own ANDAs, only Alcon-manufactured medications distributed by Sandoz under the Distribution Agreement. *Id*. ¶¶ 6-11.

Based on Plaintiffs' prescription records and the relevant time period, Plaintiff Raymond purchased latanoprost manufactured by Alcon Laboratories, Inc. (ANDA 091449, NDC 61314-0547-01) at different dates between November 22, 2011 and August 25, 2014; Plaintiff Raymond purchased timolol manufactured by Alcon Laboratories, Inc. (ANDA 074262, NDC 61314-0227-05) at different dates between March 6, 2006 and July 29, 2011, and Plaintiff Fisher purchased dorzolamide/timolol manufactured by Alcon Laboratories, Inc. (ANDA 90604, NDC 61314-0030-02) at different dates between November 3, 2011 and September 24, 2012. *See* Exhibit A; Appendix 1. Of these generic medications, Sandoz distributed the latanoprost purchased by Plaintiff Raymond on the following dates: November 22, 2011, January 3, 2012, August 21, 2012, October 13, 2012, December 1, 2012, February 1, 2013, March 24, 2013, May 4, 2013, June 20, 2013, July 17, 2013, and August 25, 2013. Seitz Aff. ¶ 15. Sandoz also distributed the dorzolamide/timolol purchased by Plaintiff Fisher on the following dates: November 3, 2011, December 6, 2011, February 15, 2012, August 15, 2012, and September 24, 2012. *Id*.

### 2. Sandoz did Not Distribute Any of the Relevant Eye Drop Medications Prior to 2011.

Plaintiffs Eike and Fisher contend that they purchased and used prescription eye drops

4

manufactured and sold by Alcon during the three years preceding the filing of this lawsuit (*i.e.*, from 2009 through 2012). FAC ¶¶ 15-16. Plaintiffs Pitler and Raymond contend that they purchased and used prescription eye drops manufactured and sold by Alcon during the five years preceding the filing of this lawsuit (i.e., from 2007 through 2012). *Id*. ¶¶ 17-18. Prior to June 30, 2011, Sandoz was not involved in the manufacturing or distribution of any Alcon products or any other products alleged to be at issue. Seitz Aff. ¶ 12.  Thus, to the extent Plaintiffs' allegations encompass purchases of prescription eye drop medications prior to June 30 2011, those allegations do not involve Sandoz at all, either as a manufacturer or distributor.

      **C.    Sandoz Was Contractually Bound to its Limited Role as Distributor of Products Manufactured By Alcon.**

Undisputed evidence reflects that Sandoz' role with respect to the Alcon-manufactured eye drop medications at issue is contractually limited to that of a distributor. The Distribution Agreement provides that Sandoz will distribute and sell the products it obtains from Alcon. The Distribution Agreement states:

> <u>Supplier Supply of Products.</u> Subject to the terms and conditions of this Agreement and all Applicable Laws, ***Supplier [Alcon] shall exclusively supply, ship and deliver to Sandoz or its designee Products, for exclusive distribution and sale in the Territory by Sandoz or its Affiliates, in sufficient quantities to meet Sandoz's and its Affiliates requirements and forecasts during the Term***, and agrees not to supply an A-rated Product to any competitor for the Products for the Territory during the Term of this Agreement. Subject to the terms and conditions of this Agreement and all Applicable Laws, ***Sandoz shall purchase from Supplier one hundred percent (100%) of its and its Affiliates' requirements of Products for the Territory during the Term***. Batches required for commercial validation shall be purchased by Sandoz in accordance with the provisions of the Agreement.

Distribution Agreement (Seitz Aff., Ex. 1), at § 3.01 (emphasis added).

The Distribution Agreement emphasizes the independent nature of Sandoz with respect to its relationship with Alcon as Alcon's distributor:

5

> <u>Nature and Relationship.</u> In making and performing this Agreement, the Parties are acting, and intend to be treated, as independent entities, and nothing contained herein will be deemed or implied to create an agency, distributorship, joint venture or partnership relationship among the Parties hereto. Except as otherwise expressly provided herein, no Party may make any representation, warranty or commitment, whether express or implied, on behalf of, or incur any charges or expenses for, or in the name of, any other Party.

*Id.* § 13.08.

As evidenced throughout the Distribution Agreement, Alcon in its capacity as Supplier is the sole manufacturer of the relevant products. *See* Distribution Agreement § 10.11(a) ("Supplier further represents, warrants and covenants that Supplier or any Affiliate manufacturing the Products, and any manufacturing facility that it uses to Manufacture Products shall, as of the date of ANDA Approval and at all times thereafter during the term of this Agreement, be registered with the FDA pursuant to and in accordance with all Applicable Laws.").

By the terms of the Distribution Agreement, therefore, Sandoz' only role was to distribute certain of Alcon's prescription eye medications, which were ***already manufactured*** and supplied by Alcon. There are no provisions which govern or otherwise contemplate that Sandoz would manufacture any Alcon products, or be involved in any way with the design or manufacture of these products. Further, there are no provisions in the Distribution Agreement that allow Sandoz as the distributor to make any changes to the products supplied by Alcon, including the medications at issue in this case or their bottles.

In his deposition in this case, Gregory Seitz, II, Sandoz' Director of Regulatory Affairs and corporate representative, further confirmed that Sandoz is merely a distributor for Alcon's prescription eye drop medications:

> Q. Okay. Now, for nearly three years Alcon has been manufacturing and supplying ophthalmic pharmaceuticals for Sandoz in the United States. Correct?
> **A. I believe so**.
> . . . .

6

> Q. All right. Whenever it was, since that time, Sandoz purchased those products, ophthalmic pharmaceuticals, from Alcon and sold, marketed, and distributed them in the United States. Correct?
> **A. Sandoz is currently a distributor of products manufactured by Alcon, yes.**
> Q. Okay. It buys those products from Alcon. Correct?
> **A. Correct.**
> . . . .
> Q. The pharmaceutical – the generic pharmaceutical products that Sandoz buys from Alcon, is Alcon the manufacturer?
> **A. I believe so.**

Deposition of Gregory Seitz, II ("Seitz Dep."), attached hereto as **Exhibit D**, at 13:15-14:25. Mr. Seitz further confirmed that Alcon alone is responsible for "development and all technical expertise" pertaining to the volume of eye drops, and Sandoz is "only a distributor for these products." *Id*. at 18:12-19:1. Plaintiffs have not presented, and cannot present, any evidence ascribing any role to Sandoz other than as distributor of certain Alcon-manufactured medications used by Plaintiffs in this case.

Because Sandoz' role with respect to the medications purchased by Plaintiffs was merely that of a distributor of Alcon-manufactured products, Sandoz could not make any changes to the size of the drops, the design of the bottle, the formulation of the medication, or any other aspect of the eye drop medications at issue in this case. Seitz Aff. ¶ 16. Sandoz did not distribute any products purchased by Plaintiffs except under its Distribution Agreement with Alcon. *Id*. ¶ 17.

    **D.**    **Plaintiffs' Expert Had No Criticisms of Sandoz.**

In addition to the undisputed facts demonstrating that Sandoz had no role in the design or manufacture of the droppers which are the subject of Plaintiffs' claims under the ICFA and MMPA, when asked whether he had any criticisms of Sandoz in this case, Plaintiffs' own expert, Dr. Alan Robin, emphatically stated he did not:

> Q. Um, quick question about, we've talked – we've talked a few times about generic pharmaceutical companies, and two of my client's [sic] Falcon and Sandoz in this case, do you have any specific criticisms of Sandoz and Falcon?
> **A. No, none whatsoever.**

7

> Q. Okay. And I don't – again, this may be outside of your expertise and you may – you can certainly tell me that, but do you understand that when it comes to generic manufacturers such as Sandoz and Falcon, that they do not have the ability to change things like warnings or labels or size of the dropper?
>
> . . . .
>
> **A. I do know that.**

Excerpted Deposition of Alan Robin, M.D. ("Robin Dep."), attached hereto as **Exhibit E**, at 230:2-15.

### III. ARGUMENT

Because Sandoz is contractually bound to its role as a mere distributor of certain Alcon-manufactured generic eye drop medications, it is both entirely uninvolved in the allegedly "unfair" conduct purportedly giving rise to Plaintiffs' claims (the design and manufacture of droppers that dispense drops exceeding the capacity of the human eye) and entirely unable to make the changes requested by Plaintiffs. *See* Distribution Agreement; *see also* Seitz Aff. ¶ 16. Plaintiffs have failed to put forth any evidence (because there is none) showing that Sandoz can be held responsible for Plaintiffs' alleged damages or that Sandoz has any authority to make the changes Plaintiffs request. Further, because of Sandoz' limited involvement as a mere distributor of Alcon-manufactured eye drop products, Plaintiffs cannot satisfy the threshold requirement of Article III standing to proceed with their claims against Sandoz. Thus, because all of the undisputed evidence establishes that Sandoz is not responsible for the alleged unfairness and cannot provide the relief requested, there are no disputed factual issues to be resolved with respect to Sandoz, and Sandoz is entitled to summary judgment in its favor as a matter of law.

#### A. Legal Standard

"Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Lynnbrook Farms v. Smithkline Beecham Corp.*, 79 F.3d 620, 623 (7th Cir. 1996); Fed. R. Civ. P. 56(c). The mere existence of a

factual dispute does not preclude summary judgment unless "the disputed fact is outcome determinative under governing law." *Egger v. Phillips,* 710 F.2d 292, 296 (7th Cir. 1983). Further, if certain facts are in dispute, the parties must come forth with documentary evidence supporting their contentions; mere allegations in the pleadings or conclusory statements in affidavits will not suffice. *First Commodity Traders v. Heinold Commodities,* 766 F.2d 1007, 1011 (7th Cir. 1985); *Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir. 1983). Because Plaintiffs have not and cannot present any evidence in support of their claims as to Sandoz, Sandoz respectfully requests that this Court enter summary judgment in its favor.

### B. Sandoz Is Entitled to Summary Judgment as to All of Plaintiffs' Claims.

#### 1. Sandoz' Role Was Contractually Limited to that of a Distributor and It Cannot Be Held Responsible for Plaintiffs' Alleged Damages.

The crux of an unfair practice claim, whether asserted under the ICFA or MMPA, is that the defendant must ***itself*** have done something allegedly unfair. To prevail on a claim under the ICFA, Plaintiffs must plead and prove, among other elements, "a deceptive or unfair act or practice ***by the defendant***[.]" *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010) (emphasis added) (citing *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 416-17 (2002)). Thus, "[t]o establish a prima facie case of unfair trade practices under the ICFA, a plaintiff must prove that a ***defendant intentionally engaged*** in an unfair practice in the course of conduct involving trade or commerce, and that this practice proximately caused harm to the plaintiff." *Kremers v. Coca-Cola Co.*, 712 F. Supp. 2d 759, 770-71 (S.D. Ill. 2010) (emphasis added) (collecting cases). Likewise, to prevail under the MMPA, Plaintiffs must plead and prove "the use or employment by another person of a method, act or practice declared unlawful," which may include "any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact." *Kelly v. Cape Cod*

9

*Potato Chip Co.*, 81 F.Supp. 3d 754, 759 (W.D. Mo. 2015) (quoting Mo. Rev. Stat. §§ 407.020.1, 407.025.1). Thus, "[t]o state a prima facie MMPA Claim," Plaintiffs must show, among other elements, that they "suffered an ascertainable loss of money or property, real or personal … as a result of ***the defendant's use*** of one of the methods or practices declared unlawful" by the statute. *Reitz v. Nationstar Mortg., LLC*, 954 F. Supp. 2d 870, 893 (E.D. Mo. 2013) (emphasis added) (citations omitted).

Here, because Sandoz' role with respect to the subject eye drop medications is limited to that of a distributor for eye drop products manufactured by Alcon, it is neither responsible for the dropper design nor able to implement the relief requested by Plaintiffs. Plaintiffs' claims against Sandoz therefore fail as a matter of law. Plaintiffs cannot present any evidence that Sandoz engaged in any unfair act at all, much less that it intentionally did so, as required to prevail under the ICFA. And Plaintiffs cannot present any evidence that Sandoz itself used one of the methods or practices declared unlawful by the MMPA. The sole and exclusive allegedly culpable conduct identified by Plaintiffs is the purported design, manufacture, and sale of prescription eye drop medications with dropper tips designed to dispense drops "so large that they exceed the capacity of the eye[.]" FAC ¶¶ 5, 9. Yet Plaintiffs have not presented and cannot present any evidence that Sandoz had anything whatsoever to do with the design or manufacture of the droppers or dropper tips. Indeed, the only conduct for which Plaintiffs seek to hold Sandoz liable is marketing and selling medications manufactured ***by Alcon***. *Id*. ¶ 22. Because Sandoz neither engaged in nor is capable of remedying the "unfair practice" asserted by Plaintiffs, the claims against Sandoz fail as a matter of law.

### 2. Plaintiffs Lack Standing to Assert Their Claims Against Sandoz.

Indeed, the undisputed record with respect to Sandoz' limited involvement as a mere distributor of Alcon-manufactured eye drop products leaves no doubt that Plaintiffs cannot even

satisfy the threshold requirement of Article III standing to proceed with their claims against Sandoz. To establish standing, in addition to demonstrating an "injury in fact," a plaintiff must show that the alleged injury is fairly traceable to a particular defendant's conduct and is likely to be redressed by the requested relief. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136-37 (1992). At the summary judgment stage, a plaintiff cannot rest on "mere allegations," but must set forth an affidavit or specific facts showing that an alleged injury resulted from a particular defendant's conduct and that the relief requested from that defendant will redress such alleged injury. See *id*. at 560-61. Plaintiffs cannot meet their burden here.

### a. Plaintiffs Cannot Trace Their Alleged Injuries to Sandoz' Conduct.

Plaintiffs are not able to establish on the undisputed record that their purported injuries are fairly traceable to Sandoz' alleged conduct. To establish standing against a particular defendant, a plaintiff must show a causal connection between the injury and the conduct complained of. *See Luster v. City of Lebanon, Illinois*, No. 04CV0663 MJR, 2006 WL 2802052, at *6 (S.D. Ill. Sept. 28, 2006). That is "the injury has to be 'fairly…trace[able] to the challenged action of the defendant, and not…th[e] result [of] the independent action of some third party[.]" *Id.* (quoting *Simon v. Easter Ky. Welfare Rights Organization,* 426 U.S, 26, 41-42 (1976)).

Here, Plaintiffs' claims against Sandoz fail as a matter of law because Plaintiffs cannot present any evidence tracing their alleged damages to any alleged conduct by Sandoz. Plaintiffs base their claims on allegations that their bottles of their eye drop medications emitted drops that were too large for the capacity of the human eye, resulting in wasted product and causing Plaintiffs to buy more medication than they needed. FAC ¶¶ 1, 10. Yet, as detailed above, Sandoz was at no time involved in the design or manufacture of any of the medications (or bottles containing the medications) Plaintiffs purchased. *See* §§ II.B, II.C, *supra*. Under the

Distribution Agreement, Sandoz merely distributed certain Alcon-manufactured generic eye drop medications that were purchased by Plaintiffs. *Id*. Sandoz' contractually mandated role as a distributor precluded it from making any changes to the size of the drops, the design of the bottle, the formulation of the medication, or any other aspect of the eye drop medications at issue in this case. *Id*. Plaintiffs have not and cannot put forth any evidence to dispute these facts, and therefore, they cannot trace their alleged injury to Sandoz.

    **b.**  **Plaintiffs' Injuries Would Not Be Redressed by the Requested Relief as to Sandoz, Because Sandoz Cannot Implement the Changes Requested by Plaintiffs.**

Plaintiffs' standing against Sandoz fails for the additional reason that Sandoz does not have the authority to implement the relief sought by Plaintiffs. For a claim to survive summary judgment, a plaintiff must establish through evidence that it is likely, and not merely speculative, that the injury complained of will be redressed by a favorable decision. *See Perry v. Vill. of Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999); *Head Start Family Educ. Program, Inc. v. Coop. Educ. Serv. Agency 11*, 46 F.3d 629, 632 (7th Cir. 1995) (quoting *Lujan*, 504 U.S. at 560-61). It is settled under this principle that, when a particular defendant does not have the authority to implement the relief requested by a plaintiff, the claims against that defendant fail as a matter of law. *See, e.g.*, *Libertarian Party of Ind. v. Marion Cnty. Bd. of Voter Registration,* 778 F.Supp. 1458, 1461 (S.D. Ind. 1991) (plaintiff lacked standing as to certain defendants because they did not have the authority to carry out the relief requested); *Claudio v. Illinois Dep't of Corr.*, No. 84 C 7154, 1985 WL 2022, at *4 (N.D. Ill. June 27, 1985) ("Since Bernardi is unable to implement the relief sought, this prayer for relief is dismissed as to him.").[3] "If the defendants

---

[3] *See also Swan v. Bd. of Educ. of City of Chicago*, 956 F. Supp. 2d 913, 919 (N.D. Ill. 2013) ("[W]here, as here, a plaintiff seeks an injunction against a defendant, he or she must demonstrate that the defendant to be enjoined has the authority to effectuate the injunction."); *McDaniel v. Bd. of Educ. of City of Chicago*, 956 F. Supp. 2d 887, 893 (N.D. Ill. 2013) ("[I]f a defendant does not have the authority to carry out the injunction, a plaintiff's claims for

have no power to redress the alleged injuries even if the court were to grant the requested relief, the plaintiff has no case or controversy against those particular defendants." *McDaniel v. Bd. of Educ. of City of Chicago*, 956 F. Supp. 2d 887, 893 (N.D. Ill. 2013) (quoting *Scott v. DiGuglielmo,* 615 F. Supp. 2d 368, 373 (E.D. Pa. 2009)).[4] This foundational tenet that a court cannot order a defendant "to act in any way that is beyond [the defendant's] authority in the first place" has been upheld in numerous other courts. *Okpalobi v. Foster,* 244 F.3d 405, 426–27 (5th Cir. 2001) (dismissing claims for lack of jurisdiction because "these defendants have no powers to redress the injuries alleged").[5]

Plaintiffs cannot establish that Sandoz would be able to implement the change that they are requesting in their FAC. Plaintiffs seek to compel Sandoz, to change "the design and dimension of the dropper tip" of the eye-drop medications to reduce the drop size to a volume no larger than 15 μL per drop. FAC ¶¶ 85, 88, Prayer for Relief. Yet Sandoz' role with respect to the medications purchased by Plaintiffs is contractually limited to that of a distributor. *See* §§ II.B, II.C, *supra*. As such, Sandoz cannot make any changes to "the design and dimension of the

---

injunctive relief must be dismissed."); *Williams v. Doyle,* 494 F. Supp. 2d 1019, 1024 (W.D. Wis. 2007) ("a claim for injunctive relief can stand only against someone who has the authority to grant it.")

[4] Although Sandoz has been unable to find any authority in the Southern District of Illinois directly on point, this Court has, in dicta, rejected a line of argument similar to Plaintiffs' argument in this case. Specifically, in *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Products Liab. Litig.*, No. 309MD02100DRHPMF, 2014 WL 1632149 (S.D. Ill. Apr. 24, 2014), this Court considered whether multiple entities in a manufacturing/distributing relationship could be held jointly and severally liable in a products liability action. Although the Court made its ruling based on preemption arguments, it did state, "the existence of the alleged supply and distribution agreement between Bayer and Teva does not change the fact that Teva had no authority to make unilateral changes to Gianvi's label. . . . The same is true with regard to Teva's ability to alter Gianvi's design or composition. Considering the above, the Court finds that the plaintiff's joint liability argument does not remove this case from the scope of *Mensing* or *Bartlett*." *Id.* at *7.

[5] *See also Turner v. McGee,* 681 F.3d 1215, 1218–19 (10th Cir. 2012) ("As is often the case, redressibility [sic] turns on the scope of authority of the defendants. We ask: Could these Defendants, enjoined as [plaintiff] has requested, remedy [plaintiff's injury]?"); *Nat'l Parks & Conservation Ass'n v. Bureau of Land Mgmt.,* 606 F.3d 1058, 1074–75 (9th Cir. 2010) (plaintiffs lacked standing as to defendant Park Service because it was not the lead agency responsible for the project in dispute); *Bronson v. Swensen,* 500 F.3d 1099, 1111 (10th Cir. 2007) ("The redressability prong is not met when a plaintiff seeks relief against a defendant with no power to enforce a challenged statute."); *Snyder v. Millersville Univ.,* No. 07–1660, 2008 WL 5093140, at *12 (E.D. Pa. Dec. 3, 2008) ("In proceeding instead only against individuals who do not have authority to afford her the desired relief, however, Plaintiff's request for a mandatory injunction necessarily fails.").

dropper tip," nor can it make any other changes to the size of the drops, the design of the bottle, the formulation of the medication, or any other aspect of the eye drop medications at issue in this case. *See id*. Plaintiffs have not and cannot present any evidence showing that Sandoz is able to make any such changes. Thus, because Sandoz does not have the authority to carry out the relief requested by Plaintiffs, Plaintiffs' claims against it fail as a matter of law.

### C. Plaintiffs Cannot Proffer Any Other Evidence in Support of Their Claims against Sandoz.

Plaintiffs have failed to provide *any* evidence in support of their claims against Sandoz. Indeed, even when Plaintiffs' own expert was asked if he had "any specific criticisms of Sandoz," he unwaveringly replied, "No, none whatsoever." Robin Dep., at 230:2-15. Given the undisputed nature of the evidence establishing Sandoz cannot be held liable to Plaintiffs, it is not necessary for the Court to consider Plaintiffs' class certification motion as to Sandoz.[6] Sandoz is entitled to summary judgment, because Plaintiffs are unable to present *any* evidence supporting their claims.

### IV. CONCLUSION

Simply stated, all of Plaintiffs' claims against Sandoz fail as a matter of law. Sandoz has never manufactured any of the eye drop medications purchased by Plaintiffs. It had no involvement in the sale of eye drops purchased by Plaintiffs prior to June 30, 2011, and its role after that date was contractually limited to that of a distributor. Accordingly, Sandoz has never had and does not now have an ability to change the drop size, the bottling, the formulation of the medication, or any other aspect of the eye drop medications at issue in this case. Even Plaintiffs' own expert has no criticisms of Sandoz. Therefore, because Plaintiffs are unable to present any evidence in support of their claims against Sandoz, and are unable to establish a genuine issue of

---

[6] Notwithstanding, Sandoz maintains denying class certification is warranted pursuant to Defendants' Opposition to Class Certification.

14

material fact, Sandoz respectfully requests the Court to grant summary judgment in its favor as to all of Plaintiffs' claims.

Dated: December 23, 2015

Respectfully submitted,

/s/ Gregory E. Ostfeld
Francis A. Citera – 6185263
Gregory E. Ostfeld - 6257163
GREENBERG TRAURIG, LLP
77 W. Wacker Drive, Suite 3100
Chicago, IL 60601
Telephone: (312) 456-8400
Fax: (312) 456-8435
ostfeldg@gtlaw.com
citeraf@gtlaw.com

Lori G. Cohen
Georgia Bar No. 174455
GREENBERG TRAURIG, LLP
3333 Piedmont Road, NE, Suite 2500
Atlanta, GA 30305
Telephone: (678) 553-2100
Fax: (678) 553-2212
cohenl@gtlaw.com

*Attorneys for Defendant Sandoz Inc.*

## CERTIFICATE OF SERVICE

   I hereby certify that on this 23rd day of December, 2015, a true and correct copy of the foregoing document was served upon all counsel of record via the Court's CM/ECF electronic notification system.

                /s/ Gregory E. Ostfeld