IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHARLENE EIKE, SHIRLEY FISHER, JORDAN PITLER and ALAN RAYMOND, <br><br> Plaintiffs, <br><br> vs. <br><br> ALLERGAN, INC., *et al.*, <br><br> Defendants. | Case No. 12-cv-1141-SMY-DGW |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Plaintiffs' Motion to Certify Class (Doc. 175) and Memorandum in Support (Doc. 176). Defendants responded in opposition (Docs. 186). For the following reasons, the Motion for Class Certification is **GRANTED**.

**Background**

In their First Amended Complaint (Doc. 44), the named plaintiffs, Charlene Eike, Shirley Fisher, Jordan Pitler, and Alan Raymond ("Plaintiffs") allege that Defendants Allergan, Inc., Allergan USA, Inc., Allergan Sales, Inc. ("Allergan"); Alcon Laboratories, Inc., Alcon Research, Ltd., and Falcon Pharmaceuticals, Ltd. ("Alcon")[1]; Bausch and Lomb Incorporated ("B&L"); Pfizer Inc. ("Pfizer"), Merck & Co., Inc., Merck, Sharp & Dohme Corp., ("Merck"); and Prasco, LLC ("Prasco") (collectively, "Defendants") violate the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq*. ("ICFA") and the Missouri Merchandising Practices Act, Mo. Rev. State. § 407.010, *et seq*. ("MMPA") by packaging and selling eye drops in plastic bottles which produce a drop that is too large for the eye, thereby creating wastage of medication and forcing the plaintiffs to spend more money on medication. The named Plaintiffs have used at least two medications that utilize the eye drop dispensers, for a minimum of ten

---

[1] The Court previously dismissed Sandoz, Inc. See Doc. 247.

1

years each (Docs 44 &176).  Each named Plaintiff and the proposed class as a whole has used the medication to treat glaucoma (Docs. 44 & 176).   Plaintiffs propose seven total classes, divided between Illinois and Missouri, and respective defendants.  Plaintiffs seek, *inter alia*, money damages and injunctive relief.  (Doc. 44, p. 49).

Plaintiffs have designated two expert witnesses, Dr. Alan Robin, an ophthalmologist, and Brian Kriegler, a statistician.  Dr. Robin's ultimate opinion is that "any drop size larger than an average of 5-15 µL is larger than the capacity of the eye and provides more medication than necessary…[i]ndeed, the literature indicates that larger drops are no more effective than drops of 15µL or even smaller."   (Doc. 176, Ex. B, ¶ 16).   Brian Kriegler developed a proposed methodology to calculate the cost to the class attributed to allegedly wasted medicine due to excessive eye-drop sizes (Doc. 176, Ex. F, p. 27).

Defendants have designated five experts: Dr. Janet Arrowsmith and Dr. David Lin are experts in the field of Federal Drug Administration regulation of prescription drugs; Dr. Jimmy Bartlett and Dr. Michael Belin are experts in eye care; and Dr. Steven Wiggins is a professor in economics.  Drs. Arrowsmith, Belin and Lin opine that Defendants could not reduce drop sizes without prior approval from the FDA (Doc. 176, Ex's GG, II, & JJ).  Dr. Wiggins has submitted a report in which he disagrees with Brian Kriegler's proposed methodology for calculating damages (Doc. 176, Ex. KK, ¶ 8).  Dr. Bartlett's ultimate opinion is that eye drops should not be reduced in size (Doc. 176, Ex. HH, ¶ 19).

To obtain class certification under Federal Rule of Civil Procedure 23, a plaintiff must satisfy each requirement of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequacy of representation—and at least one subsection of Rule 23(b).  See *Harper v. Sheriff of Cook County*, 581 F.3d 511, 513 (7th Cir. 2009).  Plaintiff bears the burden

of proving each disputed requirement by a preponderance of the evidence. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012). "Failure to meet any of the Rule's requirements precludes class certification." *Harper*, 581 F.3d at 513 (quoting *Arreola v. Godinez*, 546 F.3d 788, 794 (7th Cir. 2008)). Satisfaction of these requirements, however, categorically entitles a plaintiff to pursue his or her claim as a class action. See *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins.*, 559 U.S. 393, 398-88, 130 S. Ct. 1431 (2009). The Court has broad discretion to determine whether class certification is appropriate. *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 596 (7th Cir. 1993).

In deciding a motion to certify class, the Court does not reach the merits of the case. See *Eisen v. Carlisle v. Jacquelin*, 417 U.S. 156, 178, 94 S. Ct. 2140 (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."). The Seventh Circuit has instructed that district courts should make "whatever factual and legal inquiries are necessary under Rule 23." *Szabo v. Bridgeport Mach., Inc.*, 249 F.3d 672, 676 (7th Cir. 2001).

*Numerosity*

FRCP 23(a)(1)(a) requires that a proposed class be "so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). In evaluating whether Rule 23(a)(1) is satisfied, a court is entitled to make common sense assumptions. *Rawson v. Source Receivables Management, LLC*, 289 F.R.D. 267, 269 (N.D. Ill. 2013). Here, Plaintiffs assert that "in light of the prevalence of glaucoma, the class is undoubtedly numerous." (Doc. 176, p. 31). Defendants did not specifically dispute numerosity pursuant to Rule 23(a), but addressed it relative to

superiority which is discussed below. The Court finds that the proposed class meets the numerosity requirement based on the prevalence of glaucoma in Illinois and Missouri.

*Commonality*

A plaintiff must show questions of law or fact common to the class before a class may be certified. FED. R. CIV. P. 23(a)(2). Courts generally, give Rule 23(a)(2) a "highly permissive reading," requiring plaintiffs to show only that there is more than one issue of law or fact in common. *Clay v. American Tobacco Co.*, 188 F.R.D. 483, 491 (S.D. Ill. July 9, 1999). "A common nucleus of operative fact is usually enough to satisfy the commonality requirement." *Rosario v. Livaditis*, 963 F.2d 1013, 1017-18 (7th Cir. 1992).

Class certification will not be defeated solely because there are some factual variations among the grievances of the class members. *McManus v. Sturm Foods, Inc.*, 292 F.R.D. 606, 618 (S.D. Ill. 2013); see also *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998). A single common question will do. *Wal-Mart Stores, Inc. v. Duke*, 131 S. Ct. 2541, 2556. The "claims must depend upon a common contention of such a nature that is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Duke*, 131 S. Ct. at 2545. Commonality questions may necessarily overlap with merit contentions. *Id*. Additionally, differences in damages amounts between members of the proposed class do not defeat commonality. *In re IKO Roofing Shingle Products Liab. Litig.*, 757 F.3d 599, 602 (7th Cir. 2014).

Here, Plaintiffs maintain that there are common issues of law and fact among the putative class members. While the central question is whether the drops are too large, there are several other questions common to the class: whether the drops are too large; whether they lead to

wastage; whether it is feasible for Defendants to make smaller drops; and whether a drop size larger than 16ul have any therapeutic effect. The efficacy of the medication is not at issue. The common operative issue in this case is the size of the eye drops that are released from the eye-drop dispensers. There are differences between Plaintiffs, such as Plaintiffs' ages and varying treatment plans, but the core issue is whether the dispensers release unnecessarily large eye drops. The Court finds that commonality exists for purposes of Rule 23(a).

*Typicality*

Rule 23(a)(3) requires a court to determine whether the "claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983). The named representatives' claims must have "the same essential characteristics as the claims of the class at large." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 514 (quoting *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)).

The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members. *De La Fuente*, 713 F.2d at 232. This requirement is closely related to commonality and is satisfied if the class representatives' claims arise from the same practice or conduct as claims of proposed class members and are based on the same legal theory. *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998).

In *Butler v. Sears, Roebuck and Co.*, 727 F.3d 796, 800 (7th Cir. 2013), the defendants argued that different models of washing machines were differently defective, and therefore, the

5

plaintiffs failed to satisfy commonality, typicality, and predominance. Despite the plaintiffs having purchased different washing machines, the Seventh Circuit declined to adopt the defendant's reasoning and found a single, central, common issue of liability: whether the washing machines were defective. *Id.* at 801-02.

Here, Defendants assert that the putative class representatives are atypical because there are significant differences between their claims and those of the absent class members. Specifically, the class representatives purchased and used only 14 of the 33 glaucoma medications at issue and therefore cannot show that claims pertaining to the specific medications they used are typical of class members who purchased and used the other 19 "widely varying glaucoma drugs" (Doc. 186, p. 39). However, Plaintiffs allege that they were all exposed to the same course of conduct by Defendants: selling prescription eye medication in a bottle that delivers unnecessarily large eye drops. ("in a suit alleging a defect common to all instances of consumer product…the conduct does not differ." *In re IKO RoofingShingle Products Liability Litigation*, 757 F.3d 599, 602 (7th Cir. 2014)). The named Plaintiffs have all encountered the alleged conduct of Defendants. Thus, the Court finds that the claims of the plaintiffs are typical of the claims of the class as whole.

*Adequacy*

The fourth and final requirement of Rule 23(a) is that the named plaintiffs and proposed class counsel must fairly and adequately protect the interests of the class. FED. R. CIV. P. 23(a)(4). The adequacy determination requires the Court to inquire into whether (1) Plaintiffs' counsel is qualified, experienced and generally able to conduct the proposed litigation, and (2) the named plaintiff and the proposed class have antagonistic or conflicting interests. *Rosario*, 963 F.2d at 1018. In general, absent some showing to the contrary, adequacy of representation

will be presumed. *Westefer*, 2006 WL 2639972, at *6. Here, Defendants do not challenge the adequacy of class counsel (see Doc. 186), and the court has no reason to question class counsels; qualifications. Therefore, the Court will only analyze whether the named plaintiffs are adequate representatives.

Defendants contend that the named plaintiffs cannot adequately represent the interests of the class because they seek relief that is antagonistic to class members and "their incentive to vigorously pursue this litigation is questionable" (Doc. 186, p. 34). Defendants specifically argue that Plaintiffs' delay in filing this lawsuit "undermines the adequacy of the named plaintiff[s] as…representative[s] of the entire class." (Doc. 186, quoting *Randall v. Rolls-Royce Corp.*, 637 F.3d 818, 824 (7th Cir. 2011).

Defendants seek have this Court apply a higher standard for class representation than what exists under Rule 23. The role of class representative is nominal. *Dechert v. Cadel Co.*, 333 F.3d 801, 802-03 (7th Cir. 2003) and the Court need only determine that the named plaintiffs will adequately represent the class, without delving into the merits of the case. In this case, each named plaintiff has been diagnosed with glaucoma, has purchased medications from two or more of the Defendants, and has used the medications for at least a decade. The alleged injury, that the large drops have resulted in wastage of medication remains the same for all four named plaintiffs and for the putative class as a whole. Therefore, the Court finds that the four named plaintiffs will adequately represent the class.

**Rule 23(b)(3) Requirements**

Because the Court is satisfied that Plaintiffs have satisfied the Rule 23(a) prerequisites, it next examines whether a class action can be maintained pursuant to one of three subsections of Rule 23(b). Plaintiffs seek class certification under Rule 23(b)(3). Rule 23(b)(3) requires the

Court to find that questions of law or fact common to class member predominate over any questions affecting only individual members and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. FED. R. CIV. P. 23(b)(3).

Plaintiffs bring their claims under the consumer fraud statutes of Illinois and Missouri, but rely upon the Federal Trade Commission's Unfairness Policy Statement ("FTC Statement") to prove an unfair practice (Doc. 44). Therefore, the Court need only consider the FTC Statement as it applies to the Missouri and Illinois statutes. Plaintiffs must also show that, under the ICFA (815 ILCS 505/2), they suffered "actual damage" and under the MMPA (Mo. Rev. Stat. § 407.0102.1) they have suffered "an ascertainable loss." As such, there are only two law-related variations to Plaintiffs' claim, which do not predominate over the common questions of law; namely, whether Defendants engaged in an unfair practice.

Common questions of fact can predominate if a common nucleus of operative facts and issues underlies the claims brought by the proposed class. *Messner v. Northshore University HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012). "If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question. If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Messner*, 669 F.3d at 815, quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005). *Id.* Individual questions, however, need not be absent. *Messner*, 669 F.3d at 815. Rule 23(b)(3) contemplates individual questions—the rule requires only that those individual questions not predominate over the common questions affecting the class as a whole. *Id.* Further, the predominance requirement is satisfied when "common questions represent a significant aspect of [a] case…and can be

resolved for all members of [a] class in a single adjudication." *Messner*, 669 F.3d at 815 (quotation omitted and alterations in original).

The Seventh Circuit has instructed that courts should "evaluate the evidence…pragmatically" in order to determine whether classwide resolution would substantially advance the case." *Suchanek*, 764 F.3d at 761. The pragmatic review may warrant the Court "tak[ing] a peek at the merits." *Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010). The predominance analysis begins with the elements of the underlying action. *Costello v. BeavEx, Inc.*, 2016 WL 212797 (7th Cir., January 19, 2016). This requirement is "far more demanding" than the commonality requirement of Rule 23(a). *Amchem Products v. Windsor*, 521 U.S. 591, 623-24. But, Plaintiffs "need not…prove that the predominating question will be answered in their favor." *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1196 (2013). When adjudication of questions of liability common to the class will achieve economies of time and expense, the predominance standard is generally satisfied. *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1436-37 (2013).

As previously mentioned, Plaintiffs have based their claims of unfairness upon the FTC Statement (Doc. 44). The statement deems a practice as unfair if it "causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition" (Doc. 44, par. 122-23).[2] Thus, under the ICFA, Plaintiffs must show that Defendants Allergan, Alcon, and Bausch violated the ICFA in that they engaged in unfair acts or practices in the conduct of trade or commerce directly or indirectly affecting the people of Illinois. 815 ILCS 505/2 (West 2014); FTC Unfairness Policy Statement. The MMPA provides that the act, use or employment by any

---

[2] This Court has previously held that Plaintiffs have adequately stated a claim pursuant to the FTC statement. See Doc. 147.

9

person of any unfair practice in connection with the sale of any merchandise in trade or commerce is an unlawful practice. Mo. Rev. Stat. § 407.0102.1.[3]

Defendants argue that whether they have engaged in an "unfair practice" as to each putative class member under Illinois and Missouri law presents individual issues that overwhelm any common issues (Doc. 186, p. 18). The unfair practice alleged by Plaintiffs is that Defendants sold eye drop medication in dispensers that emitted drops that were too large. That is the central, common question of this class action lawsuit and it applies to each putative class member.

Defendants also contend that Plaintiffs could have avoided any alleged injury simply by using alternatives to eye drops. In other words, the decision by doctors to prescribe eye drops rather than alternative therapies is an intervening act that breaks the causal connection and requires individual analysis of each class members claim. However, whether there are alternatives to using eye drops is a common question that would apply to the entire class, not just individual members.

Additionally, "[p]roximate cause is necessarily an individual issue and the need for individual proof alone does not necessarily preclude class certification." *Pella Corp v. Saltzman*, 606 F.3d 391, 394 (7th Cir. 2010). In *Pella Corp*, the plaintiffs brought a class action alleging that the window design of certain Pella windows resulted in wood rot. *Id.* The defendants argued that too many individual variances between class members existed because wood rots, "for many reasons other than window design, and is affected by specific conditions such as improper installation." *Id.* The defendants argued that the plaintiffs could not satisfy the predominance requirement because determining proximate cause required individual proof from

---

[3] Both the IFCA and the MMPA have incorporated the FTC's Unfairness Policy Statement. See 815 ILCS 505/2; Mo. Code Regs. Tit. 15, § 60-8.020.

each class member. *Id.* Here, Defendants also argue that proving proximate cause will require individual proof that would predominate over common proof. However, in this case, the individual variances are minimal and not such that they would overcome the common questions.

Plaintiffs note that their claims can be summarized in four common questions: (1) whether the eye drops should be 16 µl on average to avoid wastage of product, "in other words, are drop sizes of 16 µl as effective and safe as existing drops," (2) whether existing average drop sizes are larger than 16µl, (3) whether existing eye drops lead to wastage as a result, and (4) whether it would have been feasible for defendants to have supplied drops of 16 µl (Doc 176, p. 42). They argue that these questions apply to the class as a whole and that the resolution of each of these questions will either determine the outcome for the entire class.

Defendants counter that whether class members would receive a safe and effective dose of medication with a 16 µl drop is an individualized issue that depends on the particular patient and the particular medication the patient uses. According to the Bartlett report, redesigning the droppers on all 33 products "would impact each of these medications differently, and would also affect individual patients differently" (Doc. 176, Ex. HH, ¶ 19).

Of course, Plaintiffs respond to the assertions in the Bartlett report with their own expert witness and report (see Doc. 176, p. 10). It is not the role of the Court to determine which expert is more believable. Whether the drop size is too large is a common question and whether decreasing the drop size for all of Defendants' products is feasible and safe is also a common question. Even if each plaintiff applied the drops differently, it does not defeat Plaintiff's claim that the drops are too large at the outset. Further, if it is determined that some, but not all, plaintiffs would benefit from the status quo, then the entire class would fail.

Defendants next argue that determining damages for the class members would require individualized analysis of each plaintiff's eye drop use, including the angle at which each plaintiff applies the drops, the age of the plaintiff and the pressure the plaintiff uses when applying the drops. Plaintiffs counter that although the amount of damages will vary among class members, that issue does not outweigh the common issues in this case. The Court agrees. "[T]he fact that damages are not identical across all class members should not preclude class certification." *Butler*, 727 F.3d at 801.

In addition, Plaintiffs have provided a proposed method to determine damages for the class which, they assert, can be applied to any class member (Doc. 176, Ex. F, ¶ 49). According to Plaintiffs' expert Brian Kriegler, to determine class-wide damages, one would calculate, from Defendants' drop-size studies, the cost incurred by the class for wasted medication using either the mean drop size, median drop size, or minimum drop size (Doc. 176, Ex. F, ¶ 49). One would then calculate the percentage of the mean, median, or minimum average drop in excess of 16 µL and multiply that by the amount paid at retail by the class (Doc. 176, Ex. F, ¶ 49). While the number of bottles of eye drops that any one class member has purchased will vary, the basis of damages is the same across the entire class and includes either the mean, median, or minimum of the average the wasted drops (Doc. 176, Ex. F, ¶ 49). This damage model is based on the common issue of whether the bigger drops lead to wastage (see *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1433 (2013)). Whether the damages model is accurate, as Defendants claim it is not, is a question that will be determined by the finder of fact. Accordingly, the variation in potential damages among class members is not such that it predominates over the common issues presented in this case.

Finally, the Court must determine whether a class action is the superior method for efficiently adjudicating the matter. In making this determination, the Court looks to the class members' interests in individually controlling their own separate actions, the extent of any litigation concerning the controversy already in process, the level of desirability in concentrating the litigation in this particular forum, and the likely difficulties in managing a class action. FED. R. CIV. P. 23(b)(3)(A-D). "Class certification is usually considered a superior method of adjudicating claims involving standardized conduct, even if there are individual issues that exist among class members…so long as those individual issues can be managed through bifurcated hearings." *Cicilline v. Jewel Food Stores, Inc.*, 542 F.Supp. 2d 831, 838 (N.D. Ill. 2008).

Defendants' only contention regarding the superiority requirement is that individualized issues (such as damages) will make the class action unmanageable. There are 33 eye drop medication dispensers at issue and Defendants believe that the Court "would, in effect, be stepping into the FDA's shoes" by overseeing "what would amount to 33 clinical trials…" (Doc. 186, p. 33). As the Court previously noted, individualized issues will not make the case unmanageable because common issues will predominate.

"The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem*, 521 U.S. at 617, quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (1997). Because common issues of law and fact predominate and trying the claims of the putative class members separately would result in a substantial repetition and wasted resources, proceeding as a class action is the superior form of adjudication for this case.

Having found the prerequisites and conditions satisfied, the Court hereby **GRANTS** Plaintiffs' motion and **CERTIFIES** the following classes pursuant to Federal Rule of Civil Procedure 23:

**Allergan Illinois Class (Class Representative: Charlene Eike):**

> **All persons who, in the State of Illinois, purchased prescription eye drops manufactured and sold by Allergan in multi-dose dispensers for treatment of glaucoma and/or reduction of elevated intraocular pressure, including Alphagan P, Betagan, Combigan and Lumigan, within the period of applicable statute of limitations of three years prior to the filing of this lawsuit and up to the date of certification.**

**Allergan Missouri Class (Class Representatives: Jordan Pitler, Alan Raymond):**

> **All persons who, in the State of Missouri, purchased prescription eye drops manufactured and sold by Allergan in multi-dose dispensers for treatment of glaucoma and/or reduction of elevated intraocular pressure, including Alphagan P, Betagan, Combigan and Lumigan, within the period of applicable statute of limitations of five years prior to the filing of this lawsuit and up to the date of certification.**

**Alcon Illinois Class (Class Representatives: Charlene Eike, Shirley Fisher):**

> **All persons who, in the State of Illinois, purchased prescription eye drops manufactured and sold by Alcon in multi-dose dispensers for treatment of glaucoma and/or reduction of elevated intraocular pressure, including Azopt, Betoptic S, Iopidine, Simbrinza, Travatan, Travatan Z, Apraclonidine, Betaxolol HCL, Brimonidine Tartrate, Carteolol HCL, Dorzolamide HCL, Dorzolamide HCL/Timolol Maleate, Latanoprost, Levobunolol, Metipranolol, Timolol Gel Forming Solution, and Timolol Maleate, within the period of the statute of limitations of three years prior to the filing of this lawsuit and up to the date of certification.**

**Alcon Missouri Class (Class Representatives: Jordan Pitler, Alan Raymond):**

> **All persons who, in the State of Missouri, purchased prescription eye drops manufactured and sold by Alcon in multi-dose dispensers for treatment of glaucoma and/or reduction of elevated intraocular pressure, including Azopt, Betoptic S, Iopidine, Simbrinza, Travatan, Travatan Z, Apraclonidine, Betaxolol HCL, Brimonidine Tartrate, Carteolol HCL, Dorzolamide HCL,**

Dorzolamide HCL/Timolol Maleate, Latanoprost, Levobunolol, Metipranolol, Timolol Gel Forming Solution, and Timolol Maleate, within the period of the statute of limitations of five years prior to the filing of this lawsuit and up to the date of certification.

**B&L Illinois Class (Class Representative: Shirley Fisher):**

All persons who, in the State of Illinois, purchased prescription eye drops manufactured and sold by Bausch and its predecessor(s) in multi-dose dispensers for treatment of glaucoma and/or reduction of elevated intraocular pressure, including Istalol, Brimonidine Tartrate, Dorzolamide Hydrochloride, Latanoprost, Levobunolol HCL, Optipranolol, and Timolol Maleate within the period of the applicable statute of limitations of three years prior to the filing of this lawsuit and up to the date of certification.

**B&L Missouri Class (Class Representative: Jordan Pitler):**

All persons who, in the State of Missouri, purchased prescription eye drops manufactured and sold by Bausch and its predecessor(s) in multi-dose dispensers for treatment of glaucoma and/or reduction of elevated intraocular pressure, including Istalol, Brimonidine Tartrate, Dorzolamide Hydrochloride, Levobunolol HCL, Optipranolol, and Timolol Maleate within the period of the applicable statute of limitations of five years prior to the filing of this lawsuit and up to the date of certification.

**Pfizer Missouri Class (Class Representative: Alan Raymond):**

All persons who, in the State of Missouri, purchased prescription eye drops manufactured and sold by Pfizer in multi-dose dispensers for treatment of glaucoma and/or reduction of elevated intraocular pressure, including Xalatan, within the period of the applicable statute of limitations of five years prior to the filing of this lawsuit and up to the date of certification.

**Merck Illinois Class (Class Representative: Shirley Fisher):**

All persons who, in the State of Illinois, purchased prescription eye drops manufactured and sold by Merck in multi-dose dispensers for treatment of glaucoma and/or reduction of elevated intraocular pressure, including Cosopt, Trusopt, Dorzolamide Hydrochloride/Timolol Maleate and Dorzolamide Hydrochloride within the period of the applicable statute of limitations of three years prior to the filing of this lawsuit and up to the date of certification.

**Prasco Illinois Class (Class Representative: Shirley Fisher):**

**All persons who, in the State of Illinois, purchased prescription eye drops manufactured and sold by Merck in multi-dose dispensers for treatment of glaucoma and/or reduction of elevated intraocular pressure, including Dorzolamide Hydrochloride/Timolol Maleate and Dorzolamide Hydrochloride within the period of the applicable statute of limitations of three years prior to the filing of this lawsuit and up to the date of certification.**

Next, pursuant to Federal Rule of Civil Procedure 23(g), the Court must appoint class counsel and in doing so, must consider the following: "the work counsel has done in identifying or investigating potential claims in the action; counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; counsel's knowledge of the applicable law; and the resources that counsel will commit to representing the class." FED. R. CIV. P. 23(g)(1)(A). The Court may also consider other matters "pertinent to counsel's ability to fairly and adequately represent the interests of class" in making its appointment. FED. R. CIV. P. 23(g)(1)(B).

Plaintiffs' counsel meets the standards set forth in Rule 23(g). Both attorneys have submitted firm resumes which indicate that they are knowledgeable in the applicable law (Doc. 176, Ex. BBB). Further, Counsels' previous experience is outlined in the Motion for Class Certification (Doc. 176, p. 36). Based on this information, the Court is satisfied that Plaintiffs' Counsel will fairly and adequately represent the interests of the class. Accordingly, the Court **APPOINTS** Richard S. Cornfeld and John G. Simon to serve as class counsel in this case.

Class counsel are **ORDERED** to prepare and submit to the Court, within fourteen (14) days of the date of this Order, a proposed **NOTICE** to the class which meets the requirements set forth in Federal Rule of Civil Procedure 23(c)(2)(B). Objections, if any, may be filed within

seven (7) days of the submission of the proposed notice. Class members will be given sixty (60) days from the Court's approval of the notice to opt out of the action. The notice shall include specific instructions for how members may do so.

**IT IS SO ORDERED.**

**DATE: July 25, 2016**　　　　　　　　　　　　　　　　**s/ Staci M. Yandle**
　　　　　　　　　　　　　　　　　　　　　　　　　　　**STACI M. YANDLE**
　　　　　　　　　　　　　　　　　　　　　　　　　　　**DISTRICT JUDGE**